UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9-17-15
```

RAMESH KHUDAN,

                Plaintiff,

  -v-

Superintendent WILLIAM LEE, individually,
Corrections Officer JEFFREY ERNS,
individually, Corrections Officer DUANE
MALARK, individually, Corrections Officer
"JOHN DOE 1", Lieutenant NEAL GREENE,
individually, Corrections Officers RORY
HAMILTON, individually, DAVID
DEMING, individually, ARTHUR
ANDREWS, individually, ROBERT
SHERMAN, individually, and "P." ALLEN,
individually, Nurse SANDY FILA,
individually, and Nurse KATHY PANUTO,
individually,

                Defendants.

No. 12–cv–8147 (RJS)
<u>OPINION AND ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

      Plaintiff, a New York State Department of Corrections and Community Supervision

("DOCCS") inmate, brings this action under 42 U.S.C. § 1983 ("Section 1983"), alleging

violations of his Eighth and Fourteenth Amendment rights while he was an inmate at Green Haven

Correctional Facility ("Green Haven") in October 2009.  Now before the Court is Defendants'

motion to dismiss the action in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure.  For the reasons set forth below, the motion is DENIED without prejudice

to renewal as a motion for summary judgment on the issue of administrative exhaustion.

I. BACKGROUND

A.  Facts

Plaintiff was an inmate at Green Haven from August 2008 until his transfer to Sing Sing Correctional Facility in February 2010.[1]  (Compl. ¶ 16.)  According to Plaintiff, in October 2009, while he was held at Green Haven, Corrections Officers Jeffrey Erns, Duane Malark, and John Doe 1 falsely informed other inmates – including a leader of a gang within the correctional facility – that Plaintiff was a "'sex offender' and/or 'rapist,'" when in fact Plaintiff had not been charged with or convicted of any sexual offense.  (*Id.* ¶¶ 20, 26.)  Plaintiff alleges that these three corrections officers intended the false rumors to result in an attack on Plaintiff, causing him "physical injury, serious physical injury and/or death at the hands of other inmates." (*Id.* ¶ 29.)  In addition to falsely branding Plaintiff as a sex offender, these three corrections officers also harassed Plaintiff by, *inter alia*, refusing to permit Plaintiff to shower or clean himself during a period when Plaintiff experienced medical difficulties with his bladder. (*Id.* ¶¶ 30–31.)  Moreover, Plaintiff alleges that all Defendants, not merely the three corrections officers, knew that Plaintiff had been falsely identified as a sex offender and/or rapist and that such offenders are targets for violent attacks at Green Haven.  (*Id.* ¶¶ 35–36.)

Plaintiff further alleges that, on October 31, 2009, Superintendent William Lee, Lieutenant Neal Greene, Corrections Officers Rory Hamilton, David Deming, Arthur Andrews, Robert Sherman, and "P." Allen "intentionally refused to require . . . inmates to pass through metal detectors prior to their entry to the [recreation] [y]ard." (*Id.* ¶ 57.)  Plaintiff further asserts that, at

---

[1] All facts are drawn from the Second Amended Complaint (Doc. No. 32 ("Compl.")) and are assumed to be true for purposes of this motion.  In deciding this motion, the Court has also considered Defendants' Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 47 ("Mem.")), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. No. 51 ("Opp'n")), Defendants' Reply Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 54 ("Reply")), and all accompanying declarations (Doc. Nos. 48–50).

approximately 6:00 p.m. that evening, none of the assigned prison officials – Lieutenant Greene and Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen – was located at his assigned security posts in the recreation yard. (*Id.* ¶¶ 62–63.) Instead, these officials remained inside the prison building, behind closed doors. (*Id.* ¶ 64.) Plaintiff alleges that, as a result of these prison officials' "deliberate indifference and intentional disregard" for Plaintiff's safety, an inmate entered the recreation yard with a metal weapon and stabbed Plaintiff in the right eye, causing Plaintiff "immediate excruciating pain, bleeding and visual impairment." (*Id.* ¶¶ 60, 65–68.)

Additionally, Plaintiff alleges that Lieutenant Greene, Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen, and Nurses Sandy Fila and Kathy Panuto failed to provide Plaintiff with immediate medical attention. (*Id.* ¶ 88.) Furthermore, Plaintiff claims that Nurses Fila and Panuto – in an attempt to cover up the fact that Plaintiff was attacked with a metal weapon – falsely identified the cause of Plaintiff's injury as a punch. (*Id.* ¶ 90.) Finally, Plaintiff alleges that Nurses Fila and Panuto, along with Lieutenant Greene, improperly kept Plaintiff in Green Haven's medical unit for hours before transferring him for treatment to Putnam Hospital Center. (*Id.* ¶¶ 96, 110.)

## B. Procedural History

On October 31, 2012, Plaintiff, then proceeding *pro se*, mailed to the Clerk of Court the initial Complaint in this action, which was originally assigned to the Honorable Loretta A. Preska. (Opp'n at 5–6.) This initial *pro se* Complaint included at least thirteen "Doe" Defendants. (Doc. No. 48, Ex. A at 2.) In April 2013, Chief Judge Preska ordered Plaintiff to file an Amended Complaint. (Doc. No. 7.) On October 7, 2013, Plaintiff, after retaining counsel, filed the First Amended Complaint. (Doc. No. 13.) On the same date, this action was reassigned to my docket.

The First Amended Complaint included at least eight "Doe" Defendants, and provided both a first and last name for only one of the other Defendants. (*Id.*) Following a conference on January 16, 2014, the Court permitted discovery for the limited purpose of identifying the "Doe" Defendants. On April 23, 2014, Plaintiff filed the operative pleading in this action, the Second Amended Complaint, asserting, pursuant to Section 1983, two distinct violations of his Eighth and Fourteenth Amendment rights. Specifically, Plaintiff alleges that, first, some of the Defendants "creat[ed] a dangerous environment for Plaintiff and fail[ed] to protect him from an attack," and, second, various Defendants "fail[ed] to provide immediate medical attention." (Compl. ¶¶ 117, 119.) Consequently, Plaintiff is seeking monetary damages of at least $2,000,000. On October 17, 2014, Defendants filed their motion to dismiss, arguing that: (1) Plaintiff failed to exhaust his administrative remedies; (2) his claims are largely time-barred; (3) he fails to state a cause of action; and (4) Defendants are shielded from liability on qualified immunity grounds. (Doc. Nos. 46–49.) The motion was fully submitted by December 5, 2014. (Doc. No. 54).

## II. LACK OF SUBJECT-MATTER JURISDICTION

Defendants first move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction, but none of their arguments actually pertains to the Court's subject-matter jurisdiction. Defendants perhaps view Rule 12(b)(1) as an appropriate vehicle to contend that: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's claims are barred by the statute of limitations; or (3) Defendants are shielded by qualified immunity. However, these three affirmative defenses are not jurisdictional – they are waivable – and are thus properly raised pursuant to Rule 12(b)(6), not 12(b)(1). *See, e.g.*, *Zappulla v. Fischer*, No. 11–cv–6733 (JMF), 2013 WL 1387033, at *3 n.3 (S.D.N.Y. Apr. 5, 2013) ("The exhaustion requirement, however, is not jurisdictional, but an affirmative defense that may be raised under

Rule 12(b)(6) if, on the face of the complaint, it is clear plaintiff did not exhaust all remedies." (citing *Woodford v. Ngo*, 548 U.S. 81, 101 (2006); *Amador v. Andrews*, 655 F.3d 89, 102–03 (2d Cir. 2011); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (per curiam))); *United States v. Koh*, 968 F. Supp. 136, 137 (S.D.N.Y. 1997) ("It is clear that the statute of limitations is a waivable affirmative defense." (citing *United States v. Walsh*, 700 F.2d 846, 855–56 (2d Cir. 1983), *cert. denied*, 464 U.S. 825 (1983))); *Sorano v. Taggart*, 642 F. Supp. 2d 45, 55 (S.D.N.Y. 2009) (noting that "[q]ualified immunity is an affirmative defense" and "may be waived" (citing *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003); *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997))).   Accordingly, the Court rejects Defendants' argument that it lacks subject-matter jurisdiction in this action.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants next move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6).  As noted above, the Court will consider Defendants' argument that Plaintiff failed to exhaust his administrative remedies pursuant to this Rule.  Under the Prison Litigation Reform Act ("PLRA"), "exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action." *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (emphasis in original) (citation omitted); *see also Foreman v. Comm. Goord*, No. 02–cv–7089 (SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004) (noting that "the question of exhaustion of administrative remedies *must* be addressed before the Court can consider the merits of plaintiff's claims" (emphasis added)).  The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a) (emphasis added).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It is well established that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); *Zappulla*, 2013 WL 1387033, at *4 ("The PLRA exhaustion requirement is mandatory, and courts are not free to waive or ignore it.").  Furthermore, "proper exhaustion" is required under the PLRA, meaning that a prisoner must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (Easterbrook, J.) (emphasis in original)).  As the Supreme Court has explained, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.  Therefore, "[t]he exhaustion inquiry . . . requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

DOCCS's Inmate Grievance Program ("IGP") demands that prisoners complete three steps in order to exhaust their administrative remedies. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *see also Espinal*, 558 F.3d at 125 (describing the IGP).  First, the prisoner is obligated to file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)–(b). Second, the prisoner must appeal an adverse decision by the IGRC to the superintendent of the facility. *Id.* § 701.5(c).  Third, the prisoner is required to appeal an

adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). *Id.*
§ 701.5(d). "Only after the CORC has denied an appeal may the inmate bring the matter into
federal court." *Vann v. Fischer*, No. 11–cv–1958 (KPF), 2014 WL 4188077, at *22 (S.D.N.Y.
Aug. 25, 2014) (citation and internal quotation marks omitted), *reconsideration denied*, No. 11–
cv–1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015); *see also Garvin v. Rivera*, No. 13–cv–
7054 (RJS), 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015).

Since the failure to exhaust administrative remedies is an affirmative defense, prisoner
plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints."
*Jones*, 549 U.S. at 216. However, a court may nonetheless dismiss a prison condition suit on a
Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply
with the administrative exhaustion requirement. *Id.* at 215–16 ("A complaint is subject to
dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled
to relief. . . . [That administrative exhaustion need not be pleaded] is not to say that failure to
exhaust cannot be a basis for dismissal for failure to state a claim."). "In other words, although a
complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it
*can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted."
*Garvin*, 2015 WL 876464, at *2 (citing *Williams v. Dep't of Corr.*, No. 11–cv–1515 (SAS), 2011
WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative
remedies is appropriate where, on the face of the Complaint, it is clear that plaintiff did not exhaust
such remedies.")).

Here, it is not clear from the face of the Second Amended Complaint that Plaintiff failed
to exhaust the IGP's requirements. Indeed, in the Second Amended Complaint, Plaintiff explicitly

insists that he "exhausted his administrative remedies . . . ." (Compl. ¶ 2.) Thus, the Court has little difficulty rejecting Defendants' non-exhaustion arguments at the motion to dismiss stage.

However, as part of the submissions filed in connection with this motion, Defendants have presented evidence outside the pleadings to support their claim that Plaintiff failed to exhaust the IGP's requirements, including a declaration from a DOCCS custodian of records asserting that Plaintiff did not exhaust any of the claims raised in this action.  (*See* Doc. No. 42 ¶¶ 2–9.) Significantly, Plaintiff has not attempted to contradict this statement, nor has he asserted that he followed the IGP's mandatory second and third steps:  appealing any adverse decision by the IGRC to the superintendent of the facility, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(c), and appealing any adverse decision by the superintendent to the CORC, *id.* § 701.5(d).  (Doc. No. 54 at 3–4.)

Nevertheless, even assuming *arguendo* that Defendants are correct that Plaintiff failed to exhaust the administrative procedures, this conclusion would not end the analysis.  Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused.  This inquiry is generally guided by the three-part framework set forth by the Second Circuit in *Hemphill v. New York*, which considers:  (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."  380 F.3d 680, 686 (2d Cir. 2004).[2]

---

[2] Following the Supreme Court's decision in *Woodford*, 548 U.S. at 90–91, which held that the PLRA requires "proper exhaustion" of administrative remedies in "compliance with an agency's deadlines and other critical procedural rules," the Second Circuit has noted, without holding, that the second and third prongs of the *Hemphill* analysis – estoppel and special circumstances – may no longer be applicable. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011)

Perhaps anticipating this *Hemphill* inquiry, Plaintiff asserts that, first, he received no response to his grievance and, second, that his cell was ransacked by unspecified corrections officers, resulting in the loss of mail.  (Doc. No. 50, Ex. 1 ¶¶ 5–8.)  However, neither of these factual assertions, without more, excuses the failure to exhaust.  With respect to Plaintiff's first contention, courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.  *See, e.g.*, *Smith v. City of New York*, No. 12–cv–3303 (CM), 2013 WL 5434144, at *7 (S.D.N.Y. Sept. 26, 2013) ("It is well settled that an inmate must complete all requisite steps of the IG[]P in order to fully exhaust his administrative remedies; even if he does not receive a response at a particular step in the proceedings, he must proceed in timely fashion to the next step." (citation omitted)); *Zappulla*, 2013 WL 1387033, at *4 ("If prison officials fail to respond to a prisoner's grievance or initial appeal, that does not excuse a prisoner from pursuing the matter to the third step, as prisoners are free to appeal the failure to respond to the next higher authority." (citations omitted)); *Harrison v. Goord*, No. 07–cv–1806 (HB), 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) ("Prisoners are required to exhaust their administrative remedies even if they believe that administrative remedies would be ineffective or futile." (citations and internal quotation marks omitted)); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03–cv–5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to

---

("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived." (citing cases)).  Nevertheless, the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, *see* 655 F.3d at 102–04, and district courts in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador*, *see, e.g.*, *McClinton v. Connolly*, No. 13–cv–2375 (KMW) (DCF), 2014 WL 5020593, at *2 n.4 (S.D.N.Y. Oct. 8, 2014) ("Until the Second Circuit instructs otherwise, the Court will continue to consider the three *Hemphill* exhaustion exceptions."); *Powell v. Corr. Med. Care, Inc.*, No. 13–cv–6842 (WHP), 2014 WL 4229980, at *2 n.3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); *Stevens v. City of New York*, No. 12–cv–1918 (JPO) (JLC), 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11, 2012).

exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99–cv–0966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). With respect to Plaintiff's second contention – that his cell was ransacked – this too provides no excuse for Plaintiff's failure to exhaust his administrative remedies. As the Court has previously concluded in a similar case, the IGP "provides inmates with multiple avenues to file their grievances or appeals that do not depend upon access to outgoing mail," and, thus, conclusory allegations of mail tampering are not enough to excuse the failure to exhaust administrative remedies. *Bolton v. City of New York*, No. 13–cv–5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015). Accordingly, there are no allegations in the current record that justify Plaintiff's failure to complete the administrative process.

Nevertheless, in light of the fact that failure to exhaust is an affirmative defense that, given the pleadings here, is properly reserved for a motion for summary judgment, the Court finds that the parties should have an opportunity to further develop the record with respect to whether Plaintiff in fact exhausted his administrative remedies and whether any non-exhaustion is excused as to each of the Defendants pursuant to the *Hemphill* factors. Thus, the Court will order limited, expedited discovery for this purpose. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a Rule 56 motion for summary judgment following limited, expedited discovery on the issue of administrative exhaustion.[3]

---

[3] Because the administrative exhaustion issue may be dispositive of this action, the Court does not address the other grounds for dismissal discussed in Defendants' motion to dismiss. Instead, in the event that Defendants decline to file a summary judgment motion on the exhaustion issue, they may renew their motion to dismiss on those other grounds at the conclusion of the limited discovery period. In the event that Defendants do file a summary judgment motion, they may renew their motion to dismiss if the Court does not grant summary judgment on non-exhaustion grounds.

IV. Conclusion

IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is DENIED without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 46. Accordingly, IT IS FURTHER ORDERED THAT by October 8, 2015, the parties shall complete limited, expedited discovery on the narrow issue of whether Plaintiff exhausted his administrative remedies and, if not, whether his non-exhaustion is excused as to each of the Defendants. IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment on the issue of administrative exhaustion no later than October 29, 2015; Plaintiff shall file his opposition, if any, no later than November 19, 2015; and Defendants shall file their reply, if any, no later than November 30, 2015. The parties shall submit statements of material fact pursuant to Local Civil Rule 56.1 ("56.1 statements") in connection with Defendants' motion. In light of the foregoing, and the fact that – if the administrative exhaustion issue is not dispositive of this action – Defendants may renew their motion to dismiss on the other grounds raised in their brief, IT IS FURTHER ORDERED THAT Defendants' deadline to answer or otherwise respond to the Second Amended Complaint is ADJOURNED until after the Court has resolved Defendants' summary judgment motion or, if Defendants decline to file a summary judgment motion, to October 29, 2015.

SO ORDERED.

Dated:     September 17, 2015
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE