UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMESH KHUDAN,

                                Plaintiff,

        -v-                                                    No. 12-cv-8147 (RJS)
                                                               OPINION AND ORDER
Superintendent WILLIAM LEE, *et al.*,

                                Defendants.

RICHARD J. SULLIVAN, District Judge:

        Plaintiff brings this action against various officers of the New York State Department of

Corrections and Community Supervision ("DOCCS") under 42 U.S.C. § 1983 alleging violations

of his Eighth and Fourteenth Amendment rights while he was an inmate at Green Haven

Correctional Facility ("Green Haven").  Now before the Court is Defendants' motion for summary

judgment on the ground that Plaintiff failed to exhaust his administrative remedies.  For the reasons

set forth below, Defendants' motion is granted.

## I. BACKGROUND[1]

### A.  Facts

        Plaintiff, a New York State prisoner currently housed at the Franklin Correctional Facility,

was formerly incarcerated at Green Haven, a prison administered by the DOCCS.  Plaintiff alleges

that on October 31, 2009, while he was an inmate at Green Haven, he was "violently attacked and

---

[1] The following facts are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 61 ("Rule 56.1 Statement" or "56.1 Stmt.")), and Plaintiff's Counter Rule 56.1 Statement (Doc. No. 67 ("Counter Statement" or "Counter Stmt.")).  In deciding Defendants' motion for summary judgment, the Court also has considered Defendants' memorandum of law in support of their motion (Doc. No. 60 ("Mem.")), Plaintiff's memorandum of law in opposition (Doc. No. 66 ("Opp'n")), and Defendants' reply (Doc. No. 70 ("Reply")), as well as the declarations and exhibits submitted in connection with the instant motion.

stabbed in the eye" by a fellow inmate in the facility's recreational yard (the "October 31 Incident"). (Counter Stmt. ¶¶ 3, 18, 20–22; *see also* 56.1 Stmt. ¶¶ 1–3.) Plaintiff attributes his injuries to the fact that Defendants Duane Malark and Jeffrey Erns, Corrections Officers at Green Haven, falsely informed members of a gang that he was a sex offender and rapist, and that Defendants Superintendent William Lee, Lieutenant Neal Greene, and Corrections Officers Rory Hamilton, David Deming, Arthur Andrews, Robert Sherman, and P. Allen failed to provide security in the recreational yard and take other security measures that would have prevented the attack. (Counter Stmt. ¶¶ 3–4.) For several days after the attack, Plaintiff was hospitalized at Putnam County Hospital, where he was treated for his injuries. (Counter Stmt. ¶ 12.)

For purposes of this motion, the parties' dispute centers entirely on whether Plaintiff properly exhausted the administrative remedies available to him with respect to the October 31 Incident. Specifically, DOCCS administers the Inmate Grievance Program ("IGP"), which ordinarily requires prisoners to complete a three-step process in order to exhaust administrative remedies. *See* N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5; *see also Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (describing IGP regulations in effect in 2009).[2] At step one, the prisoner is obligated to file a grievance, consisting of, among other things, "a concise, specific description of the problem and the action requested," with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the incident. N.Y. Comp. Codes R. & Regs., tit. 7,

---

[2] By contrast, grievances that allege "harassment" by prison staff – in other words, "employee misconduct meant to annoy, intimidate or harm an inmate" – may be subject to expedited review and immediately referred to the superintendent, who must make a decision within twenty-five calendar days of receipt of a harassment grievance. N.Y. Comp. Codes R. & Regs., tit. 7, §§ 701.2(e), 701.8(f)–(h); *see also Leer v. Fisher*, No. 13-cv-8529 (JPO), 2015 WL 413253, at *4–5 (S.D.N.Y. Feb. 2, 2015) (describing the procedure for harassment allegations). However, Plaintiff avers, and Defendants do not dispute, that the ordinary three-step review process applied in this case. (Opp'n 3, 5; *see also* Doc. No. 31 at 2.) Accordingly, the Court assumes that Plaintiff's grievance was not eligible for expedited review.

§ 701.5(a).  The IGRC then has sixteen calendar days from receipt of the grievance to informally resolve the issue, and if there is no informal resolution, the IGRC must conduct a hearing within sixteen calendar days of receiving the grievance and issue a written decision within two working days after the hearing concludes.  *Id.* § 701.5(b).  At step two, a prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility within seven calendar days by completing and signing the appeal section on his IGRC response form and submitting it to the grievance clerk.  *Id.* § 701.5(c).  The superintendent then has twenty calendar days to respond to the prisoner's appeal.  *Id.*  Finally, at step three, the prisoner may appeal an adverse decision from the superintendent by submitting a "notice of decision to appeal" form to the Central Officer Review Committee ("CORC") within seven days.[3]  *Id.* § 701.5(d).  If at any level of review the decisionmaker fails to timely respond to the grievance, the inmate may appeal to the next level.  *Id.* § 701.6(g); *see also Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015).  While an inmate may also ask the DOCCS Inspector General to investigate a complaint, "such an investigation is not a formal part of the IGP."  *Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. 2015).

Here, Defendants contend that Plaintiff failed to complete any step of the three-step grievance process, and point to the absence of any records at Green Haven reflecting that Plaintiff ever filed a grievance related to the October 31 Incident.  Specifically, Defendants rely on an affidavit from the inmate records coordinator at the facility, Jennifer Hotaling, who attests that a diligent search of Green Haven's records reveals no grievance being filed by Plaintiff in relation to the October 31 Incident, notwithstanding the fact that it is Green Haven's policy to maintain

---

[3] Although the superintendent must forward grievances regarding DOCCS-wide policies directly to the CORC, *id.* at § 701.5(c)(3)(i), Plaintiff does not allege that he complained of DOCCS-wide policies.

records of all grievances filed within the facility. (Doc. No. 64 ("Hotaling Decl.") ¶ 2.) Significantly, Ms. Hotaling's search did uncover a grievance from Plaintiff in Green Haven's records, filed March 2, 2010, in which Plaintiff made "general complaints about [his] medical care" at the facility and alleged violations of, among other things, the Health Insurance Portability and Accountability Act, but that grievance made no reference to the October 31 Incident. (*Id.* ¶ 2; *see also id.* at 7–12 (enclosing a copy of Plaintiff's grievance regarding medical care at Green Haven)). Defendants also point to the lack of evidence that Plaintiff ever appealed an adverse disposition of his purported grievance at step two or step three. (56.1 Stmt. ¶ 4.) Specifically, Jeffrey Hale, the assistant director of the IGP, attests that, having conducted a diligent search of the CORC's database for records of appeals, he could not locate any grievances relating to the claims presented in this case, even though the CORC maintains computer records of all appeals received from facilities participating in the IGP since 1990. (Doc. No. 63 ("Hale Decl.") ¶¶ 2–3, 9.)

For his part, Plaintiff claims that he completed all three steps of the IGP, although he provides no evidence other than his own declaration and deposition, which, as discussed further below, are insufficient to create a genuine dispute of material fact. Plaintiff also attests that the staff of Green Haven repeatedly interfered with his efforts to have his grievance adjudicated by ransacking his cell, threatening to kill him if he complained to the superintendent, and threatening him whenever he attempted to learn the status of his grievance. (Counter Stmt. ¶¶ 6, 23–24, 26–28; *see also* Doc. No. 65-2 ("Khudan Dep.") 13:12–16, 14:22–15:4, 16:6–9.) However, Plaintiff fails to point to any specific dates when these incidents occurred, does not identify any names of officers who purportedly threatened him, fails to identify the specific locations in Green Haven

where these alleged threats took place, and does not provide any other details of the improper conduct.

## B.  Procedural History

On October 29, 2012, Plaintiff, then proceeding *pro se* and *in forma pauperis*, submitted his first complaint in this action, which was originally assigned to the Honorable Loretta A. Preska. (Doc. Nos. 2, 6.)  In April 2013, then-Chief Judge Preska ordered Plaintiff to file an amended complaint.  (Doc. No. 7.)  After retaining counsel, Plaintiff filed the first amended complaint on October 7, 2013.  (Doc. No. 13.)  That same date, this action was reassigned to my docket.  On April 23, 2014, Plaintiff filed the operative pleading in this action, the second amended complaint, asserting two distinct violations of his Eighth and Fourteenth Amendment rights pursuant to Section 1983.  (Doc. No. 32.)  On October 17, 2014, Defendants moved to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to 12(b)(6).  (Doc. Nos. 40, 43.)  Specifically, Defendants argued for dismissal based on Plaintiff's failure to exhaust administrative remedies under the PLRA, among other grounds.  (Doc. No. 43.)  On September 17, 2015, the Court denied the motion to dismiss without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion.  (Doc. No. 55 at 11.)  Nevertheless, because "the question of exhaustion of administrative remedies *must* be addressed before the Court can consider the merits of [P]laintiff's claims" (*id.* at 5 (quoting *Foreman v. Comm. Goord*, No. 02-cv-7089 (SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004)), the Court authorized the parties to conduct limited, expedited discovery on the issue of administrative exhaustion and directed Defendants to promptly file the instant motion for summary judgment solely on the issue of administrative exhaustion (*id.*

at 10–11).  Accordingly, Defendants submitted their motion for summary judgment on November

13, 2015 (Doc. Nos. 59, 60), Plaintiff submitted his opposition on December 3, 2015 (Doc. No.

66), and the motion was fully briefed when Defendants submitted their reply on December 29,

2015 (Doc. No. 70).

## II.  LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should

be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is "no genuine

dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed

facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept

the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties

disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving

party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence

but is instead required to view the evidence in the light most favorable to the party opposing

summary judgment, to draw all reasonable inferences in favor of that party, and to eschew

credibility assessments."  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show

a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*,

132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn,"

*Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks

omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]'– that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III.  DISCUSSION

Defendants argue that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the PLRA.  The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion."  *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (internal quotation marks and alterations omitted)).  As the Supreme Court and Second Circuit have instructed, "proper exhaustion . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Woodford*, 548 U.S. at 90).  "The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has

7

complied with those procedures." *Espinal*, 558 F.3d at 124. Furthermore, factual disputes related to administrative exhaustion are properly resolved by the Court, not by the jury. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011).

Under the IGP, an inmate must exhaust all available administrative remedies by completing all three steps before filing suit in federal court, and "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Laguna v. Kwan*, No. 13-cv-7079 (VB), 2015 WL 872366, at *3 (S.D.N.Y. Jan. 28, 2015) (quoting *Gardner v. Daddezio*, No. 07-cv-7201 (SAS), 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008)). Here, under the IGP's three-step procedure, Plaintiff was initially required to file a grievance with the IGRC within twenty-one calendar days of the October 31 Incident, that is, no later than November 21, 2009. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a)–(b). Even assuming Plaintiff filed such a grievance, and even assuming he received no response, as he alleges (Counter Stmt. ¶ 8), Plaintiff was required to complete steps two and three as well – appealing both to the superintendent and to the CORC if the superintendent had adversely disposed of his grievance or failed to timely respond. N.Y. Comp. Codes R. & Regs., tit. 7, §§ 701.5(c)–(d), 701.6(g); *see also Heyliger*, 624 F. App'x at 782 (noting that if a decisionmaker fails to timely respond to a grievance under the IGP, the inmate must appeal to the next step in order to properly exhaust).

As noted above, Defendants contend that no grievance was ever filed by Plaintiff regarding the October 31 Incident, and, as proof of that fact, point to the Hotaling Declaration, which indicates that a diligent search found no records of such grievance in Green Haven's records, and the Hale Declaration, which also attests that a diligent search of the CORC's database of appeals

turned up no grievances relating to the claims in this case.  (Hotaling Decl. ¶ 2; Hale Decl. ¶ 9.)[4] And while Defendants acknowledge that Plaintiff sent a complaint to the Inspector General, Defendants note, correctly, that the submission to the Inspector General did not constitute a proper appeal.  *See Dabney*, 604 F. App'x at 3.  Accordingly, Defendants have "adequately supported the affirmative defense of failure to exhaust."  *See, e.g.*, *Bennett v. Onua*, No. 09-cv-7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that defendants discharged their initial burden on summary judgment by producing affidavits that a search of prison records indicated that no grievances were ever filed).

For his part, Plaintiff has failed to produce a copy of his grievance and has introduced no other evidence, beyond his own testimony, that his grievance was actually filed pursuant to the IGP.  Moreover, even if Plaintiff's testimony were enough to create a disputed issue of fact with respect to whether he filed a grievance form with the IGRC at Green Haven (Counter Stmt. ¶¶ 5, 12; Doc. No. 65-1 ("Khudan Decl.") ¶ 5; Khudan Dep. 7:21–23, 8:9–10), he fails to point to evidence that he properly appealed his grievance to the superintendent at step two.  As noted above,

---

[4] Although Plaintiff urges the Court to disregard Ms. Hotaling's declaration because it is not based on her personal knowledge and contains hearsay (Opp'n 4–5), the Court is unpersuaded by this argument.  Here, Defendants may offer Ms. Hotaling's declaration pursuant to Rule 803(10), which exempts from the hearsay bar statements offered to prove the absence of a public record after a diligent search in order to prove that a matter did not occur, where "a public office regularly kept a record or statement for a matter of that kind."  Fed. R. Evid. 803(10)(A)(ii).  Ms. Hotaling attests to being familiar with Green Haven's grievance record retention system in her capacity as inmate records coordinator.  (Hotaling Decl. ¶¶ 1, 3.)  She also attests that grievance records were "maintained and kept as records in the ordinary course of operations at Green Haven" pursuant to the facility's "policy and procedure."  (*Id.* at ¶ 3)  Accordingly, Defendants may offer Ms. Hotaling's declaration for the purpose of proving that Plaintiff never filed a grievance with the IGRC.  The fact that Ms. Hotaling did not herself conduct the search, but merely directed that it be conducted, is also not a basis for striking the declaration.  *See Davis v. U.S. Dep't of Homeland Sec.*, No. 11-cv-203 (ARR) (VMS), 2013 WL 3288418, at *7 (E.D.N.Y. June 27, 2013) ("[D]istrict courts within this circuit . . . have found an official with broader supervisory authority who is not necessarily involved in the specific search for the records at issue to be capable of submitting a sufficient declaration." (collecting cases)).  Furthermore, the fact that Ms. Hotaling did not attest to having been a "custodian" of Green Haven's records also is not reason to exclude her affidavit.  *See United States v. Parker*, 761 F.3d 986, 992 (9th Cir. 2014); *United States v. McDonald,* 905 F.2d 871, 875 (5th Cir. 1990).

Plaintiff was required to complete the appeal section on his IGRC response form and submit it to the grievance clerk.  N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(c).  In his deposition, Plaintiff claimed that he "tried to speak with the [s]uperintendent about the grievance," but that unnamed officers in his unit deterred him from doing so through threats.  (Counter Stmt. ¶ 27 (citing Khudan Dep. 15:5–17).)   But the law is clear that prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison staff.  *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Bolton v. City of New York*, No. 13-cv-5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015) ("The law is well settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient" to satisfy the "PLRA exhaustion requirement." (collecting cases)).  Furthermore, although Plaintiff asserts that he never received a response to his grievance (Counter Stmt. ¶ 25), he was still required to appeal to the superintendent.  N.Y. Comp. Codes R. & Regs., tit. 7, § 701.6(g); *see also Heyliger*, 624 F. App'x at 782.  Accordingly, the Court concludes, as a matter of law, that Plaintiff failed to complete step two of the three-step IGP.

Plaintiff similarly fails to create a genuine dispute of fact as to whether he completed step three of the IGP – the filing of an appeal to the CORC.  In his affidavit, Plaintiff makes no mention of submitting an appeal to the CORC, but curiously characterizes his complaint to the Inspector General's Office as his "effort to appeal to the highest level of the grievance process" (Doc. No. 65-1 ¶ 9), even though appeals to the Inspector General's Office are "not a formal part of the IGP," *Dabney*, 604 F. App'x at 3.  At his deposition, Plaintiff asserted that he sent an appeal of his grievance to "Albany" (Khudan Dep: 16:10–14), but Plaintiff fails to specify where in Albany he sent his grievance and fails to provide any other details, including the approximate date he

submitted his appeal and whether he properly used a "notice of decision to appeal" form.  Relying entirely on this vague and confusing deposition testimony, Plaintiff argues that he submitted his grievance to the CORC, which Plaintiff asserts is located in Albany.  (Opp'n 5–6.)

While the Court recognizes that it "cannot resolve issues of credibility on summary judgment," it nonetheless finds that Plaintiff's "self-serving" and "incomplete" testimony that he sent an appeal to "Albany" is insufficient to create a *genuine* dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent to the CORC and Plaintiff's testimony that his complaint to the Inspector General was his "effort to appeal" his grievance.  *See Lozada v. Delta Airlines, Inc.*, No. 13-cv-7388 (JPO), 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014) (concluding that plaintiff's "self-serving, incomplete, and inconsistent" deposition testimony was "not sufficient to create a genuine dispute of fact in light of [defendant's] documented evidence"); *see also Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656–57 (2d Cir. 2009) (affirming grant of summary judgment where "plaintiffs rel[ied] almost exclusively upon" their "speculative" and "vague" testimony in the face of defendants' documentary evidence); *Toro v. City of New York*, No. 12-cv-4093 (RRM) (RLM), 2015 WL 1014044, at *5 (E.D.N.Y. Mar. 6, 2015) (granting summary judgment where "there is no evidence – beyond the allegations in his complaint and his own unsupported deposition testimony – that [plaintiff] actually reported such misconduct to the authorities").  Accordingly, the Court concludes as a matter of law that Plaintiff failed to complete step three of the IGP.  Because Plaintiff failed to complete steps two and three of the IGP process, the Court thus finds that Plaintiff failed to properly exhaust administrative remedies under the IGP.

Plaintiff fares no better with his argument that the IGP's grievance process was not "available" to him at Green Haven.  In June, the Supreme Court forcefully rejected judge-made

exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *Ross*, 136 S. Ct. at 1858–59. As the Supreme Court clarified, an inmate's failure to exhaust may only be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Id.* The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief" and therefore constructively unavailable. *Id.* at 1859. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. To meet this high bar, the administrative remedy must be "essentially 'unknowable.'" *Id.* Finally, a grievance process is unavailable "when prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Id.* at 1860. While the Second Circuit has suggested that these scenarios are merely illustrative and "not . . . exhaustive," these illustrations nonetheless guide the Court's inquiry. *See Williams v. Correction Officer Priatno*, -- F.3d --, No. 14-4777, 2016 WL 3729383, at *4 n.2 (2d Cir. July 12, 2016).

Here, Plaintiff essentially asserts the third scenario, alleging that prison officials routinely interfered with his attempts to file grievances. However, much of Plaintiff's Rule 56.1 Counterstatement relies on inadmissible hearsay. For example, Plaintiff attests that he "was

informed by other [unnamed] inmates that grievances routinely go 'missing' and are not responded to" at Green Haven.  (Counter Stmt. ¶ 7 (citing Khudan Decl. ¶ 7).)  Plaintiff also maintains that he was warned on November 23, 2009 by an unidentified officer from the Inspector General's Office not to file a grievance because "in this facility, the officers . . . will set you up" and "hurt you."  (*Id.* ¶ 33 (citing Khudan Dep. 16:14–22).)  Because Plaintiff offers these out-of-court statements in order "to prove the truth of the matter asserted" in them, Fed. R. Evid. 801(c)(2), and because these statements do not qualify for any exceptions to the hearsay rules, such testimony is not cognizable on summary judgment and will not be considered by the Court, *see, e.g. ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 357 (2d Cir. 1997) (noting that hearsay that is inadmissible at trial is not cognizable on summary judgment motion); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419–20 (S.D.N.Y. 2014) (disregarding plaintiff's affidavit that "contain[ed] a surfeit of improper averments, including statements not based on Plaintiff's personal knowledge and conclusory statements that are nothing more than speculation," including an averment that corrections officer "developed a reputation for missing time during his probationary period").

Plaintiff also claims that certain unnamed officers in Green Haven "ransacked" his room, tampered with his grievances and his mail, and threatened to kill him when he attempted to learn the status of his grievance from the superintendent and other officers.  (Counter Stmt. ¶¶ 6, 15–16, 23–24, 26–28, 32; *see also* Khudan Dep. 6:24–7:5, 11:11–12, 11:14–21, 13:12–16.)  However, Plaintiff fails to specify the dates of any threats, the names of any officers who threatened him, and the locations in Green Haven where these alleged threats took place.  Courts generally review claims of "retaliation by prisoners 'with skepticism' because of the ease with which a retaliation claim may be fabricated."  *Bolton*, 2015 WL 1822008, at *2 (quoting *Nunez v. Goord*, 172 F. Supp.

13

2d 417, 431 (S.D.N.Y. 2001)).  Thus, it is well settled that "[c]onclusory allegations of intimidation are not sufficient" to create a genuine disputed issue of fact regarding the availability of administrative remedies.  *See, e.g.*, *Hooks v. Howard*, No. 907-cv-0724 (TJM) (RFT), 2010 WL 1235236, at *5 n.3 (N.D.N.Y. Mar. 30, 2010) (collecting cases).   Accordingly, Plaintiff's accusations, which "stand alone" and are "unsupported," are insufficient to withstand summary judgment.  *See Bolton*, 2015 WL 1822008, at *2; *accord Heyliger v. Gebler*, No. 06-cv-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting summary judgment, notwithstanding plaintiff's testimony that his "original grievance was discarded by prison officials," where plaintiff "never described or named the individual who allegedly took this action"), *aff'd*, 624 F. App'x 780 (2d Cir. 2015); *Litchmore v. Williams*, No. 11-cv-7546 (DAB) (JCF), 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013) (granting summary judgment where there was "no evidence" that "plaintiff's appeal was actually mailed, intercepted, or ignored" and no "evidence of any particular officer's misconduct"); *Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (granting summary judgment where plaintiff provided only "conclusory allegations" regarding unavailability of administrative remedies in his affidavit), *aff'd*, 441 F. App'x 816 (2d Cir. 2011); *Rosado v. Fessetto*, No. 9:09-cv-67 (DNH) (ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *report and recommendation adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (granting summary judgment where plaintiff failed to "specify the dates of [officers'] alleged misconduct, the details of the particular incidents of threats and harassment, the officers who allegedly made threatening

14

or harassing statements, or a copy of the alleged appeal that Plaintiff claims he sent through the mail that was, as he claims, fraudulently tampered with"); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (granting summary judgment where, "[e]ven assuming [plaintiff] did submit the grievances," plaintiff "offer[ed] no evidence that any particular officer thwarted his attempts to file," and instead, "simply contend[ed] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006).

With respect to the other two "scenarios" identified in *Ross*, Plaintiff has not argued, nor pointed to any admissible evidence, that the IGP operated as a simple dead end – "with officers unable or consistently unwilling to provide any relief to aggrieved inmates" – or that it was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially 'unknowable.'" *Ross*, 136 S. Ct. at 1859.  Although the Second Circuit recently found that certain grievance procedures under the IGP met this latter standard, the court's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams*, who was housed in a special housing unit and segregated from the regular prison population, gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2.  However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the district court's dismissal for failure to exhaust.  Here, by contrast, Plaintiff asserts that he filed his grievance with Green Haven's IGRC.  (Opp'n 4.)  And while Plaintiff claims that his grievance received no response,

15

the IGP clearly required him to properly appeal the IGRC's failure to respond to the superintendent and ultimately to the CORC. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.6(g); *Heyliger*, 624 F. App'x at 782. Given this unambiguous directive, Plaintiff has clearly failed to show that the IGP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

In light of the fact that none of the exceptional scenarios outlined by the Supreme Court in *Ross* apply, the Court concludes that Plaintiff has failed to establish a genuine dispute of material fact regarding the availability of administrative remedies at Green Haven. Therefore, the Court grants Defendants' motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (instructing that *in forma pauperis* status should be denied for the purpose of an appeal where the appeal would "lack . . . an arguable basis in law or fact"). The Clerk is respectfully directed to terminate the motion pending at docket number 59 and to close this case.

SO ORDERED.

Dated:      September 8, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/8/16_

16